

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**
JUL 3 1 2023
ARTHUR JOHNSTON
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

                                            18 U.S.C. § 241
                                            18 U.S.C. § 242
                                            18 U.S.C. § 924(c)(1)
                                            18 U.S.C. § 1512(k)
                                            18 U.S.C. § 1512(b)(3)

v.                                            CRIMINAL NO. 3:23-cr-62-TSL-LGI

BRETT MORRIS MCALPIN,
JEFFREY ARWOOD MIDDLETON,
CHRISTIAN LEE DEDMON,
HUNTER THOMAS ELWARD,
DANIEL READY OPDYKE, and
JOSHUA ALLEN HARTFIELD

**The United States Attorney charges:**

## GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

### Relevant Background

1.      Brett Morris McAlpin ("McAlpin") was employed as the Chief Investigator with the Rankin County Sheriff's Office, in Rankin County, Mississippi.

2.      Jeffrey Arwood Middleton ("Middleton") was employed as a Lieutenant with the Rankin County Sheriff's Office, in Rankin County, Mississippi.

3.      Christian Lee Dedmon ("Dedmon") was employed as Narcotics Investigator by the Rankin County Sheriff's Office, in Rankin County, Mississippi.

4.      Hunter Thomas Elward ("Elward") was employed as a patrol Deputy with the Rankin County Sheriff's Office, in Rankin County, Mississippi.

5.    Daniel Ready Opdyke ("Opdyke") was employed as a patrol Deputy with the Rankin County Sheriff's Office, in Rankin County, Mississippi.

6.    Joshua Allen Hartfield ("Hartfield") was employed as a Narcotics Investigator with the Richland Police Department, in Rankin County, Mississippi.

## The Property

7.    The property located at 135 Conerly Road, in Braxton, Rankin County, Mississippi, is a four-bedroom ranch-style home ("the property"), owned by K.W., a white woman.

8.    In January 2023, two Black men, M.J. and E.P., were residing at the property. E.P. was a long-time friend of K.W.'s and was helping care for K.W. M.J. was residing at the property temporarily.

## The Complaint

9.    On January 24, 2023, **BRETT MORRIS MCALPIN**, the Chief Investigator for the Rankin County Sheriff's Office ("RCSO"), received a complaint from one of his white neighbors ("Neighbor") in Braxton, Mississippi. Neighbor told **MCALPIN**, among other things, that several Black males had been staying at the property, and that Neighbor had observed suspicious behavior.

10.   That evening, **MCALPIN** directed RCSO Investigator **CHRISTIAN LEE DEDMON** to take care of it.

## The Goon Squad

11.   **DEDMON** reached out to a shift of officers who called themselves "The Goon Squad" because of their willingness to use excessive force and not to report it.

12.   The Goon Squad was led by Lieutenant **JEFFREY ARWOOD MIDDLETON**, and during the time material to this Information, it consisted of Deputy **HUNTER**

THOMAS ELWARD, Deputy DANIEL READY OPDYKE, and other RCSO deputies known to the United States Attorney.

### The Mission

13. At 9:28pm, DEDMON sent a group message to three members of the Goon Squad: MIDDLETON, ELWARD, and OPDYKE. DEDMON's message read, "Are y'all available for a mission?"

14. DEDMON messaged the group that they were going to the property on Conerly Road, and warned them: "There is a chance [of] cameras...let's approach east and work eas[y]." The defendants understood "work easy" to mean knock on the door, rather than kick it down. ELWARD texted back an eyeroll emoji, and OPDYKE texted a .gif of a baby crying.

15. DEDMON messaged the group, "If we don't see cameras go." The defendants understood that to mean that if they did not see surveillance cameras at the property, then they should enter without a warrant.

16. DEDMON messaged the group, "No bad mugshots." The defendants understood "No bad mugshots" to be a green light to use excessive force on parts of the body not captured by a mugshot.

### The Staging and Approach

17. MIDDLETON, ELWARD, and OPDYKE met up at the Cato Volunteer Fire Department ("CVFD") in Braxton, the agreed-upon staging area, and waited for DEDMON to join them.

18. DEDMON radioed the group that he had someone with him who would cover the back door of the property during their initial entry. That someone was Richland

Police Department ("RPD") Officer **JOSHUA ALLEN HARTFIELD**, who was riding with **DEDMON**.

19. **DEDMON** and **HARTFIELD** drove by the staging area in **DEDMON's** truck. **MIDDLETON, ELWARD,** and **OPDYKE** each pulled out of the staging area in their RCSO-issued vehicles and followed closely behind **DEDMON's** truck.

20. Shortly thereafter, **DEDMON, HARTFIELD, ELWARD, OPDYKE,** and **MIDDLETON**, in four vehicles, arrived at the property and pulled into the driveway. **MCALPIN**, who had been surveilling the property from down the street, pulled into the driveway behind them.

### The Warrantless Entry

21. Noticing a surveillance camera above the front door of the property, **DEDMON, ELWARD,** and **OPDYKE** walked around to the carport door, which had no surveillance camera covering it, and **HARTFIELD** walked around to the back door, which also had no surveillance camera covering it.

22. **DEDMON** and **OPDYKE** each kicked the carport door, but it did not open. **ELWARD** then took a turn kicking the carport door and it busted open.

23. **HARTFIELD** kicked the back door and it swung open.

24. The defendants then entered the house, **HARTFIELD** through the back door and the other five defendants through the door to the carport door.

25. The defendants did not have a warrant to enter the house, and there were no exigent circumstances that would authorize their entry without a warrant.

### The Tasings and False Arrests

26. When **DEDMON, ELWARD,** and **OPDYKE** entered the house through the carport door, they saw two Black men inside: M.J. and E.P.

27.     The defendants shouted orders at M.J. and E.P., and they both complied.

28.     **DEDMON** tased M.J., handcuffed him, and placed him under arrest without probable cause to believe that he had committed a crime.  After M.J. was in handcuffs, **DEDMON** continued to tase him multiple times.

29.     **ELWARD** tased E.P., handcuffed him, and placed him under arrest without probable cause to believe that he had committed a crime.  After E.P. was in handcuffs, **ELWARD** continued to tase him multiple times.  **OPDYKE** kicked E.P. in the ribs.

### The First Shooting

30.     **DEDMON** walked over to E.P. and demanded to know where the drugs were.  E.P. replied that there were no drugs.

31.     **DEDMON** took out his gun, pointed it toward the back of the house, and pulled the trigger.  The gun discharged, and the bullet lodged in the wall of the adjoining laundry room.

32.     **DEDMON** again demanded to know where the drugs were.  E.P. again replied that there were no drugs.

### The Racial Taunting

33.     The defendants grabbed M.J. and E.P., who were still handcuffed, and brought them to the living room.

34.     The defendants, all of whom are white, called M.J. and E.P. racial slurs, including "nigger," "monkey," and "boy"; accused them of taking advantage of the white woman who owned the house; and warned them to stay out of Rankin County and go back to Jackson or to "their side" of the Pearl River—areas with higher concentrations of Black residents.

35.   As defendants were taunting M.J. and E.P., **DEDMON** repeatedly drive-stunned M.J. with his taser.

### The Dildo

36.   During a search of the house, **OPDYKE** kicked in the padlocked door to the front bedroom.  Inside, he found a white-flesh-toned dildo and a BB gun.  **OPDYKE** mounted the dildo onto the end of the BB gun and brought the dildo into the living room, where M.J. and E.P. were handcuffed and seated on the couch.  **OPDYKE** forced the dildo into the mouth of E.P., and attempted to force the dildo into the mouth of M.J.

37.   **DEDMON** grabbed the dildo from **OPDYKE**, slapped M.J. and E.P. in the face with it, and taunted them.

38.   **DEDMON** forced M.J. and E.P. onto their knees with their backs to **DEDMON**, and **DEDMON** threatened to anally rape M.J. and E.P. with the dildo.  **DEDMON** grabbed the back of M.J.'s pants and moved the dildo toward M.J.'s backside, but **DEDMON** stopped when he noticed that M.J. had defecated on himself.

### The Abuse

39.   M.J. and E.P., still handcuffed, were forced onto their backs on the floor of the living room.  **ELWARD** held them down, and **DEDMON** poured milk, alcohol, and chocolate syrup on their faces and into their mouths, forcing M.J. and E.P. to involuntarily ingest milk, alcohol, and syrup; and **DEDMON** poured cooking grease on E.P.'s head.

40.   **ELWARD** threw eggs at M.J. and E.P.

### The Showering

41.     Defendants ordered M.J. and E.P. to strip naked and shower off to wash away evidence of abuse before M.J. and E.P. were brought to jail.

42.     While M.J. and E.P. were showering off, **HARTFIELD** guarded the bathroom door to make sure they did not escape.

43.     After M.J. and E.P. showered off and changed into clean underwear and sweats, they were brought to the side bedroom.

### The Beatings

44.     **OPDYKE** grabbed a wooden kitchen implement and struck E.P. with it.

45.     **MIDDLETON** grabbed a metal sword and assaulted E.P. with it.

46.     **DEDMON** and **MCALPIN** grabbed pieces of wood and struck E.P. in the back with them.

### The Taser Torture

47.     M.J. and E.P. were handcuffed and forced to sit down on the floor of the side bedroom.

48.     Pointing out that M.J. and E.P. had been tased by both RCSO-issued tasers and an RPD-issued taser, the defendants decided to test their tasers on M.J. and E.P. to see which one was the most powerful.

49.     At this point, **DEDMON, MIDDLETON, HARTFIELD,** and **ELWARD** tased M.J. and E.P. repeatedly: **ELWARD's** taser was discharged 8 times, **HARTFIELD's** taser was discharged 5 times, and **DEDMON's** taser was discharged 4 times.

### The Thefts

50.     **MCALPIN** and **MIDDLETON** left the side bedroom and walked to the front bedroom to steal personal property that had caught their attention during an earlier search of the house.

51.     **MCALPIN** and **MIDDLETON** each stole rubber bar mats, brought them out to their vehicles, and then came back inside.

52.     **MCALPIN** was about to steal a Class A military uniform when he heard two gunshots coming from the direction of the side bedroom, where the other four defendants were detaining M.J. and E.P.

### The Mock Execution and Shootings

53.     The first gunshot was discharged by **DEDMON**, who stepped from the side bedroom into the adjoining carport, pulled out his gun, and fired into the yard.

54.     **ELWARD** surreptitiously removed a bullet from the chamber of his gun.

55.     **ELWARD** forced M.J. onto his knees, stuck the gun into M.J.'s mouth, and pulled the trigger.  The unloaded gun clicked but did not discharge.

56.     **ELWARD** racked the slide, intending to dry-fire a second time. When **ELWARD** put the gun back into M.J.'s mouth and pulled the trigger, the gun discharged. The bullet lacerated M.J.'s tongue, broke his jaw and exited out of his neck.

### The Cover Story

57.     As M.J. was bleeding on the floor, not receiving medical attention, the defendants huddled up on the rear screened-in porch and devised a false cover story to cover up their misconduct.

58.   In order to cover up their entry into the property without a warrant, the defendants agreed to tell investigators: that when the defendants arrived at the house, they observed a Black male—later identified as M.J.—in the driveway; that **DEDMON** obtained M.J.'s consent to search his pockets and found two baggies of methamphetamine; and that M.J. fled into the house and **DEDMON** ran after him.

59.   In order to cover up **ELWARD's** shooting of M.J., the defendants agreed to tell investigators: that **ELWARD** brought M.J. into the side bedroom to conduct a controlled drug buy over the phone; that **ELWARD** had removed M.J.'s handcuffs; that M.J. had reached for a gun; and that **ELWARD** shot M.J. in self-defense.

60.   In order to limit the number of witnesses to the shooting, the defendants agreed to tell investigators that, at the time of the shooting, **MCALPIN** and **MIDDLETON** had left the property and were driving home; **DEDMON** and **HARTFIELD** were at **DEDMON's** truck; and **OPDYKE** was escorting E.P. to a patrol car.

### The Cover Up

61.   The defendants then planted and tampered with evidence to corroborate their false cover story and cover up their misconduct.

62.   **MIDDLETON** offered to plant a "throw-down" gun on M.J. **MIDDLETON** kept, in his patrol car, a Titan Tiger .38 special snub-nosed revolver with serial number 0887098, that was not registered to him in case a gun needed to be planted on a victim.

63.   **ELWARD** responded that he would use the BB gun on which they had mounted the dildo during the assaults in the living room.

64. **ELWARD** grabbed the BB gun and brought it to the side bedroom, where M.J. was still bleeding from the mouth and neck and was still not receiving any medical attention. **ELWARD** removed M.J.'s handcuffs and planted the BB gun next to M.J.

65. **DEDMON** picked up spent taser cartridges and got rid of them.

66. **MCALPIN** ordered **OPDYKE** to take E.P. from the side bedroom, put him in the back of **OPDYKE's** patrol car, and then unlock the back door so **MCALPIN** could talk to E.P.

67. **MCALPIN** opened the back door of **OPDYKE's** patrol car and pressured E.P. to go along with the cover story. **MCALPIN** suggested to E.P. that if E.P. stuck to the cover story, then **MCALPIN** would make sure that E.P. would be released from jail.

68. Aware that his RCSO vehicle had a GPS tracking system, **MCALPIN** left the scene to corroborate his cover story that he had not been present during the shooting. **MCALPIN** told **DEDMON** that he was leaving and instructed **DEDMON** to call him in a few minutes. **MCALPIN** drove away, **DEDMON** called him, and then **MCALPIN** returned to the scene.

69. **HARTFIELD** retrieved the soiled clothes that M.J. and E.P. had been wearing when they were abused. **HARTFIELD** took the clothes outside and tried to light them on fire, but they were too wet. **HARTFIELD** threw the clothes into the woods behind the house.

70. **HARTFIELD** removed the hard drive from the home's surveillance system and put it in **DEDMON's** truck. Later that night, **HARTFIELD** threw the hard drive into Steen Creek in Florence, Mississippi.

71.    **OPDYKE** searched the hallway for the shell casing from **DEDMON's** first shooting. **OPDYKE** found the shell casing, picked it up, and put it in his pocket.  Later that night, **OPDYKE** put the shell casing in a water bottle, secured the top, and threw the bottle into tall grass on the side of Cato Road in Braxton, Mississippi.

72.    The defendants searched for the shell casing from **DEDMON's** second shooting, but they could find only one shell casing in the side bedroom, and they assumed that shell casing was from **ELWARD's** shooting of M.J.

73.    **DEDMON** volunteered to "take care of" the drugs.  **DEDMON** retrieved some methamphetamine he had previously obtained from a subject-turned-informant but had not entered into evidence, divided it into two baggies, and submitted them to the crime lab as belonging to M.J.

74.    **MCALPIN** and **MIDDLETON** each threatened the other officers that if any of them told the truth about what happened that night, **MCALPIN** and **MIDDLETON** would find out and kill them.

<u>**The False Reports and False Charges**</u>

75.    Each defendant wrote and submitted a report documenting the false cover story.

76.    On January 25, 2023, **ELWARD** signed a sworn affidavit that M.J. committed felony aggravated assault on a police officer, in violation of Mississippi Code 97-3-7(2), "under circumstances manifesting extreme indifference to the value of human life" by "obtaining a firearm the[n] aiming/pointing it in the direction of Deputy Elward." Upon the filing of **ELWARD's** affidavit, M.J. was charged with felony aggravated assault on a police officer.  The maximum punishment for that offense is 30 years in prison.

11

77.     On January 25, 2023, **DEDMON** signed a sworn affidavit that M.J. committed felony

        possession of methamphetamine, in violation of Mississippi Code 41-29-139(c). Upon

        the filing of Dedmon's affidavit, M.J. was charged with felony possession of

        methamphetamine.  The maximum punishment for that offense is 8 years in prison.

78.     On January 25, 2023, **DEDMON** signed a sworn affidavit that M.J. committed

        misdemeanor disorderly conduct, in violation of Mississippi Code 97-35-7, by

        "refusing to follow verbal commands and stop running after locating a felony amount

        of methamphetamine on his person."  Upon the filing of **DEDMON's** affidavit, M.J.

        was charged with misdemeanor disorderly conduct.  The maximum punishment for

        that offense is 1 year in prison.

79.     M.J. was detained on those false charges at the University of Mississippi Medical

        Center until he posted a bond and was released from law enforcement custody.  The

        false misdemeanor charge against M.J. remained pending until June 30, 2023, when a

        Rankin County Justice Court Clerk approved its immediate remand. The false felony

        charges against M.J. remained pending until July 5, 2023, when a Rankin County Court

        Judge ordered the charges remanded to the files of the Rankin County Circuit Court.

### The False Statements to Investigators

80.     Each defendant was interviewed separately by agents with the Mississippi Bureau of

        Investigation ("MBI"), the law enforcement agency in Mississippi with authority to

        investigate officer-involved shootings.

81.     During those interviews, each defendant stuck to the cover story and gave a false

        account to investigators.

## COUNT 1
### Conspiracy Against Rights
### (18 U.S.C. § 241)

82.    Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by reference.

83.    On or about January 24, 2023, in Rankin County, in the Northern Division of the Southern District of Mississippi, defendants, **BRETT MORRIS MCALPIN, JEFFREY ARWOOD MIDDLETON, CHRISTIAN LEE DEDMON, HUNTER THOMAS ELWARD, DANIEL READY OPDYKE,** and **JOSHUA ALLEN HARTFIELD**, while acting under color of law, knowingly and willfully conspired and agreed to injure, oppress, threaten, and intimidate M.J. and E.P. in their free exercise and enjoyment of the right, secured to them by the Constitution and laws of the United States, to be free from unreasonable searches and seizures, which includes the right be free from unlawful warrantless entry into a home and from the use of unreasonable force by a law enforcement officer. In furtherance of the conspiracy and to effect the objects thereof, the defendants committed, in the Southern District of Mississippi, the overt acts set forth in Paragraphs 21-56 of this Information.

       All in violation of Title 18, United States Code, Section 241.

## COUNT 2
### Deprivation of Rights Under Color of Law
### (18 U.S.C. § 242)

84.    Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by reference.

85.    On or about January 24, 2023, in Rankin County, in the Northern Division of the Southern District of Mississippi, defendants, **BRETT MORRIS MCALPIN, JEFFREY ARWOOD MIDDLETON, CHRISTIAN LEE DEDMON, HUNTER**

13

**THOMAS ELWARD, DANIEL READY OPDYKE,** and **JOSHUA ALLEN HARTFIELD,** while acting under color of law and aiding and abetting one another, willfully deprived M.J. of the right, secured and protected by the Constitution and laws of the United States, to be free from unreasonable seizures, which includes the right be free from the use of unreasonable force by a law enforcement officer. Specifically, the Defendants (1) physically assaulted M.J. while he was handcuffed and compliant by punching and kicking him; tasing him; throwing eggs at him; and pouring milk, alcohol, and chocolate syrup over his head and into his mouth; and (2) failed to intervene to protect M.J. from being assaulted, despite the opportunity to do so.  This offense involved the use of dangerous weapons, and resulted in bodily injury to M.J.

All in violation of Title 18, United States Code, Sections 242 and 2.

**COUNT 3**
**Deprivation of Rights Under Color of Law**
**(18 U.S.C. § 242)**

86. Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by reference.

87. On or about January 24, 2023, in Rankin County, in the Northern Division of the Southern District of Mississippi, defendants, **BRETT MORRIS MCAPLIN, JEFFREY ARWOOD MIDDLETON, CHRISTIAN LEE DEDMON, HUNTER THOMAS ELWARD, DANIEL READY OPDYKE,** and **JOSHUA ALLEN HARTFIELD,** while acting under color of law and aiding and abetting one another, willfully deprived E.P. of the right, secured and protected by the Constitution and laws of the United States, to be free from unreasonable seizures, which includes the right be free from the use of unreasonable force by a law enforcement officer.

14

Specifically, the defendants (1) physically assaulted E.P. while he was handcuffed and compliant by punching and kicking him; striking him with objects, including a metal sword, pieces of wood, and a wooden kitchen implement; tasing him; throwing eggs at him; and pouring milk, alcohol, and chocolate syrup over his head and into his mouth; and (2) failed to intervene to protect E.P. from being assaulted, despite the opportunity to do so.  This offense involved the use of dangerous weapons, and resulted in bodily injury to E.P.

All in violation of Title 18, United States Code, Sections 242 and 2.

### COUNT 4
### Deprivation of Rights Under Color of Law
### (18 U.S.C. § 242)

88.    Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by reference.

89.    On or about January 24, 2023, in Rankin County, in the Northern Division of the Southern District of Mississippi, defendant, **CHRISTIAN LEE DEDMON**, while acting under color of law, willfully deprived E.P. of the right, secured and protected by the Constitution and laws of the United States, to be free from unreasonable seizures.  Specifically, **DEDMON** discharged a firearm in close proximity to E.P. for the purpose of scaring E.P.  This offense involved the use of a dangerous weapon.

All in violation of Title 18, United States Code, Section 242.

### COUNT 5
### Discharge of a Firearm During a Crime of Violence
### (18 U.S.C. § 924(c)(1))

90.    Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by reference.

15

91.     On or about January 24, 2023, in Rankin County, in the Northern Division of the

Southern District of Mississippi, defendant, **CHRISTIAN LEE DEDMON**, did

knowingly use, carry, brandish, and discharge a firearm, to wit, a Glock 17gen5, 9

millimeter caliber pistol, serial number BGSX861, during and in relation to a crime of

violence for which the defendant may be prosecuted in a court of the United States, to

wit: Deprivation of Rights Under Color of Law under Title 18, United States Code,

Section 242 as charged in Count 4 of this Information.

All in violation of Title 18, United States Code, Section 924(c)(1)(A).

**COUNT 6**
**Deprivation of Rights Under Color of Law**
**(18 U.S.C. § 242)**

92.     Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by

reference.

93.     On or about January 24, 2023, in Rankin County, in the Northern Division of the

Southern District of Mississippi, defendants, **CHRISTIAN LEE DEDMON,**

**HUNTER THOMAS ELWARD,** and **DANIEL READY OPDYKE**, while acting

under color of law and aiding and abetting one another, willfully deprived E.P. of the

right, secured and protected by the Constitution and laws of the United States, not to be

deprived of liberty without due process of law, which includes the right to bodily

integrity.  Specifically, **DEDMON** and **OPDYKE** assaulted E.P. in the mouth and face

with a dildo without E.P.'s consent or a legitimate law enforcement purpose; and

**ELWARD** failed to intervene to protect E.P. from being assaulted with a dildo, despite

the opportunity to do so.  This offense involved the use of a dangerous weapon and

resulted in bodily injury to E.P.

All in violation of Title 18, United States Code, Sections 242 and 2.

## COUNT 7
### Deprivation of Rights Under Color of Law
### (18 U.S.C. § 242)

94.     Paragraphs 1-81 of this Indictment are re-alleged and fully incorporated herein by

reference.

95.     On or about January 24, 2023, in Rankin County, in the Northern Division of the

Southern District of Mississippi, defendants, **CHRISTIAN LEE DEDMON,**

**HUNTER THOMAS ELWARD,** and **DANIEL READY OPDYKE**, while acting

under color of law and aiding and abetting one another, willfully deprived M.J. of the

right, secured and protected by the Constitution and laws of the United States, not to

be deprived of liberty without due process of law, which includes the right to bodily

integrity.  Specifically, **DEDMON** and **OPDYKE** assaulted M.J. in the mouth and

face with a dildo without M.J.'s consent or a legitimate law enforcement purpose, and

**ELWARD** failed to intervene to protect M.J. from being assaulted with a dildo, despite

the opportunity to do so.  This offense involved the use of a dangerous weapon and

resulted in bodily injury to M.J.

All in violation of Title 18, United States Code, Sections 242 and 2.

## COUNT 8
### Deprivation of Rights Under Color of Law
### (18 U.S.C. § 242)

96.     Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by

reference.

97.     On or about January 24, 2023, in Rankin County, in the Northern Division of the

Southern District of Mississippi, defendant, **HUNTER THOMAS ELWARD**, while

acting under color of law, willfully deprived M.J. of the right, secured and protected

by the Constitution and laws of the United States, to be free from unreasonable

seizures, which includes the right be free from the use of unreasonable force by a law

enforcement officer.  Specifically, **ELWARD** forced his gun into M.J.'s mouth and

pulled the trigger.  The gun discharged, and the bullet lacerated M.J.'s tongue, broke

M.J.'s jaw, and exited out of M.J.'s neck.  This offense involved the use of a

dangerous weapon.

All in violation of Title 18, United States Code, Section 242.

### COUNT 9
### Discharge of a Firearm During a Crime of Violence
### (18 U.S.C. § 924(c)(1))

98.    Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by
reference.

99.    On or about January 24, 2023, in Rankin County, in the Northern Division of the
Southern District of Mississippi, defendant, **HUNTER THOMAS ELWARD**, did
knowingly use, carry, brandish, and discharge a firearm, to wit, a Glock 17gen5, 9
millimeter caliber pistol, serial number BWMD253, during and in relation to a crime of
violence for which the defendant may be prosecuted in a court of the United States to
wit: Deprivation of Rights Under Color of Law under Title 18, United States Code,
Section 242 as charged in Count 8 of the Information.

All in violation of Title 18, United States Code, Section 924(c)(1)(A).

### COUNT 10
### Deprivation of Rights Under Color of Law
### (18 U.S.C. § 242)

100.   Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by
reference.

101.   On or about January 24, 2023, in Rankin County, in the Northern  Division of the
Southern District of Mississippi, defendants, **BRETT MORRIS MCALPIN,**

JEFFREY ARWOOD MIDDLETON, CHRISTIAN LEE DEDMON, HUNTER THOMAS ELWARD, DANIEL READY OPDYKE, and JOSHUA ALLEN HARTFIELD, while acting under color of law, willfully deprived M.J. of the right, secured and protected by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes an arrestee's right to be free from a law enforcement officer's deliberate indifference to his serious medical needs. Specifically, after ELWARD shot M.J. in the mouth, and M.J. was bleeding from the mouth and neck, in clear need of medical care, the defendants attempted to cover up their misconduct rather than provide M.J. with medical care, thereby acting with deliberate indifference to a substantial risk of harm to M.J. This offense resulted in bodily injury to M.J.

All in violation of Title 18, United States Code, Section 242.

## COUNT 11
### Conspiracy to Obstruct Justice
### (18 U.S.C. 1512(k))

102.    Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by reference.

### The Conspiracy and its Objects

103.    From on or about January 24, 2023, through on or about April 2023 in Rankin County, in the Northern Division of the Southern District of Mississippi, defendants, BRETT MORRIS MCALPIN, JEFFREY ARWOOD MIDDLETON, CHRISTIAN LEE DEDMON, HUNTER THOMAS ELWARD, DANIEL READY OPDYKE, and JOSHUA ALLEN HARTFIELD,  knowingly and willfully conspired and agreed to knowingly corruptly persuade, attempt to corruptly persuade, or engage in misleading conduct toward another person, with the intent to hinder,

19

delay, or prevent the communication to a federal law enforcement officer or judge of information relating to the commission or possible commission of a federal offense, in violation of 18 U.S.C. § 1512(b)(3).

### The Purpose of the Conspiracy

104.   The purpose of the conspiracy was to cover up the defendants' official misconduct, including but not limited to with acts set for in Paragraphs 21-56.

### The Manner and Means of the Conspiracy

105.   The manner and means by which the defendants sought to accomplish the objects and purpose of the conspiracy included devising a false cover story, as set forth in Paragraphs 57-60 of this Information and engaging in a variety of obstructive acts to corroborate that false cover story and cover up their misconduct, as set forth in Paragraphs 61-81 of this Information.

### Overt Acts in Furtherance of the Conspiracy

106.   In furtherance of the conspiracy, and to accomplish the objects thereof, the defendants committed the overt acts set forth in Paragraphs 61-81 of this Information.

   All in violation of Title 18, United States Code, Section 1512(k).

### COUNT 12
### Obstruction of Justice
### (18 U.S.C. 1512(b)(3))

107.   Paragraphs 1-81 of this Information are re-alleged and fully incorporated herein by reference.

108.   From on or about January 24, 2023 and continuing to on or about February 3, 2023, in Rankin County, in the Northern Division of the Southern District of Mississippi, defendants, **BRETT MORRIS MCALPIN, JEFFREY ARWOOD MIDDLETON, CHRISTIAN LEE DEDMON, HUNTER THOMAS ELWARD, DANIEL**

20

**READY OPDYKE,** and **JOSHUA ALLEN HARTFIELD,** aiding and abetting one another, knowingly corruptly persuaded, attempted to corruptly persuade, and engaged in misleading conduct toward another person, with the intent to hinder, delay, and prevent the communication to a federal law enforcement officer and judge of information relating to the commission and possible commission of a federal offense.  Specifically, defendants, **MCALPIN, MIDDLETON, DEDMON, ELWARD, OPDYKE,** and **HARTFIELD,** committed the obstructive acts set forth in Paragraphs 61-81 of this Information.

All in violation of Title 18, United States Code, Section 1512(b)(3) and 2.

### COUNT 13
### Conspiracy Against Rights
### (18 U.S.C. § 241)

109.  Paragraphs 1-81 of this Information are re-alleged and fully incorporated here by reference.

110.  From on or about January 24, 2023 to on or about January 25, 2023, in Rankin County, in the Northern Division of the Southern District of Mississippi, defendants, **BRETT MORRIS MCALPIN, CHRISTIAN LEE DEDMON,** and **HUNTER THOMAS ELWARD,** knowingly and willfully conspired and agreed to injure, oppress, threaten, and intimidate M.J. in his free exercise and enjoyment of the right, secured to him by the Constitution and laws of the United States, to be free from unreasonable seizures, which includes the right be free from malicious prosecution. Specifically, the defendants conspired to charge M.J. with felony assault on a police officer, felony possession of methamphetamine, and misdemeanor disorderly conduct, without probable cause to believe that M.J. had committed those crimes; and **DEDMON** and **ELWARD** knowingly included false and misleading information in

21

the charging documents, as set forth in Paragraphs 75-79.  As a consequence, M.J. was initially detained and deprived of liberty pending resolution of the charges, which were eventually dismissed.

All in violation of Title 18, United States Code, Section 241.

DARREN J. LAMARCA
UNITED STATES ATTORNEY

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
U.S. DEPARTMENT OF JUSTICE

Christopher J. Perras
Special Litigation Counsel